UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 13-93-DLB**

**DARLENE VANOVER**                                                                **PLAINTIFF**

vs.                  **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                 **DEFENDANT**

\*\*\*     \*\*\*     \*\*\*     \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Darlene Vanover filed her application for Supplemental Security Income (SSI) on October 20, 2005, alleging a disability onset date of October 18, 2005. (Tr. 103). She claimed she was no longer able to perform substantial gainful activity due to disabling back pain, dizziness, and depression. Plaintiff's claim was denied initially (Tr. 113), and again on reconsideration (Tr. 118). At Plaintiff's request, an ALJ held a hearing on October 10, 2007, and thereafter denied her claim. (Tr. 92-98). The Appeals Council, however, vacated the ALJ's decision and remanded Plaintiff's claim for further findings and clarifications.

1

The ALJ held another hearing on November 22, 2011, and again denied her claim. (Tr. 47-58). Plaintiff appealed that decision to the Appeals Council, which denied her request for review in March 2013. (Tr. 8-12). This appeal followed.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th

Cir. 1994).

## B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 20, 2005, the application date. (Tr. 52). At Step 2, the ALJ found that Plaintiff's back pain and affective mood disorder were severe impairments within the meaning of the regulations. (*Id.*). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 53).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform "a range of light work," with the following limitations:

> [Plaintiff] can lift up to 20 pounds occasionally and 10 pounds more frequently; stand and/or walk six hours total out of eight; and sit six hours total out of eight. There are no limitations on pushing or pulling and she can frequently climb, balance, stoop, crouch, kneel and crawl but is limited on vibration and overhead reaching with the upper right extremity to frequently. There are no limitations in her ability to understand, remember and carry out simple instructions or make judgments on simple work-related decisions. She has mild limitations . . . in ability to understand, remember and carry out complex job instructions; make judgments on complex work-related decisions; or to interact appropriately with the public, coworkers and supervisors. Finally, she has mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting.

(Tr. 56).

Accordingly, the ALJ proceeded to the final step of the sequential analysis. At Step 5, the ALJ found that Plaintiff was capable of performing her past relevant work as a hotel maid, and otherwise capable of performing a significant number of jobs in the national economy, to include housekeeping and laundry services. (Tr. 57). The ALJ based this conclusion on the testimony from a vocational expert (VE), in response to a hypothetical

3

assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 58). Based on the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was not under a "disability" as defined by the Social Security Act. (*Id.*).

    **C.    Analysis**

Plaintiff lists five issues on appeal: (1) whether the ALJ met the required standard of giving appropriate weight to the treating physician; (2) whether the ALJ gave adequate reasoning for refusing to accept the opinion of the treating physician; (3) whether a reasonable person could conclude and justify that Plaintiff is not disabled in light of the substantial limitations assigned by the treating physician, supported by overwhelming evidence of a lifetime of such difficulties and further evaluation of the consultative physician; (4) whether the ALJ considered the combined effects of all of her impairments; and (5) whether the ALJ considered the duration requirement of substantial gainful activity and not merely the ability to find a job and physically perform it.

    **1.    The ALJ's decision to reject the opinion of Plaintiff's treating physician was both adequately explained and supported by substantial evidence**

The first three issues will be treated as one because they all relate to the ALJ's decision to reject the opinions of Plaintiff's treating physician, Dr. Laura Asher. After treating Plaintiff for seven months, Dr. Asher rendered a report in September 2009 that Plaintiff suffers "severe" pain and would be forced to miss at least twenty days of work per month because of her physical limitations. Dr. Asher opined that Plaintiff could work zero hours a day, stand only one hour and sit only two hours in an eight-hour day. Further, Dr. Asher found that Plaintiff could only occasionally bend and manipulate her hands, and she

4

could never squat, crawl, climb or reach above shoulder level.  Finally, Dr. Asher remarked that Plaintiff was moderately restricted in her ability to drive automobiles.  To be blunt, Dr. Asher offered a grim outlook for Plaintiff.

Plaintiff believes Dr. Asher's opinion is supported by objective medical evidence. Specifically, she points to an MRI performed on July 26, 2012 MRI showing she had mild indentation on the ventral thecal surface of the C5-C6 and C6-C7 disks, and narrowing of the neural foraminals.  She believes these results are consistent with an MRI performed on October 18, 2011 (Tr. 416), and are supported by a second MRI performed that same day, which found a mild anterior disc bulge at L2-L3 disc and degenerative changes between the L1-L2 and L4-L5 discs.  (Tr. 418).  Additionally, Plaintiff believes Dr. Asher's opinion is supported by the report of Consultative Examiner Charles Laney, who opined that Plaintiff cannot sit or stand more than an hour in an eight-hour day (Tr. 382).  Because this evidence supports the findings of Plaintiff's treating physician, Plaintiff argues the ALJ erred in failing to give her treating physician controlling weight.

A treating physician's opinion as to the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Even if the opinion is not entitled to "controlling weight," there remain a presumption, albeit a rebuttable one, "that the opinion of a treating physician is entitled to great deference."  *Id.* In determining how much deference to give to the treating physician's opinion, the ALJ must consider a number of factors, including "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's

conclusions; the specialization of the physician; and any other relevant factors." *Id.*

The ALJ must also "provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This rule ensures that claimants understand the disposition of their case, particularly when their own physician deems them disabled, and also permits meaningful appellate review of the ALJ's decision. *Id.* Thus, even if the ALJ's decision to disregard the treating physician's opinion is supported by the record, the decision may still be reversed if adequate explanation is missing. *Id.*

Here, the ALJ explicitly stated that she did not accord Dr. Asher's opinion any significant weight for two reasons (Tr. 56, 57). First, Plaintiff conceded that Dr. Asher's functional limitations were based on the limitations she reported to the doctor at her appointments. (Tr. 662. 663). For example, Dr. Asher's opinions about how much Plaintiff could lift or walk were based on Plaintiff's own answers to those questions. It was permissible for the ALJ to disregard the treating physician's opinion on this basis, particularly when the ALJ also concluded that Plaintiff was not credible. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). Second, the ALJ noted that Dr. Asher's opinions were inconsistent with the objective medical evidence. That opinion was adequately explained and supported by substantial evidence.

As the ALJ explained, Plaintiff's MRIs showed mild to minimal limitations. This is even true of the MRIs Plaintiff relies upon in support of her argument that she is disabled. For example, Plaintiff's July 16, 2012 MRI, which she cites in her motion for summary judgment, found that her "vertebral bodies are *normal* in height," there is "*mild* indentation

6

. . .on the ventral thecal surface at C5-C6 and C6-C7 disk space," and that the "rest of the cervical disks are *normal* in height and signal intensities and shows *no* significant herniation of the nucleus pulposus." (Tr. 20) (emphasis added). The MRI did note degenerative changes in the facet joints at C5-C6 and C6-C7 bilaterally, but described "mild" stenosis at each of those joints. (*Id.*).

An October 18, 2011 MRI produced equally unremarkable results. (Tr. 420). It found that Plaintiff's "thoracic vertebral bodies are normal in heigh" and that there is "no evidence of acute compression fracture or spondylolisthesis." (*Id.*). The MRI also found that Plaintiff's thoracic cord is "*normal* in configuration and signal intensity" and "*no* significant herniation of the nucleus pulposus." (*Id.*) (emphasis added). Moreover, "visualized soft tissue appear[ed] grossly *unremarkable.*" (*Id.*). (emphasis added). Ultimately, the MRI rendered "negative results." (*Id.*).

Another MRI from October 18, 2011 revealed some structural abnormalities, but showed nothing to support Dr. Asher's grim functional limitations. It noted "mild scoliosis," "mild anterior marginal osteophytes," and "disc degenerative changes . . . with decreased T2 signal intensity from L1-L2, though L4-L5 discs." (Tr. 418). But the MRI also found that lumbar vertebral bodies and lumbar disks were normal in height and signal intensity. There was no significant herniation of the nucleus pulposus, nor was there stenosis of the spinal cord. (*Id.*).

The ALJ also explained that treatment notes were inconsistent with Dr. Asher's report and Plaintiff's subjective complaints. Doctors routinely noted that Plaintiff had normal gait and station, and muscle strength, although they did note reduced range of motion at times. (Tr. 484, 489, 498, 501, 503, 508, 517, 521, 525, 535, 541, 550, 555). In fact,

7

Plaintiff reported to a different doctor at the same time she was seeing Dr. Asher, and did not complain of numbness in her hands as she had complained to Dr. Asher. (Tr. 572, 573). Moreover, Dr. Elizabeth Douglas, who treated Plaintiff immediately after Dr. Asher, noted in May 2011 that Plaintiff had negative signs of numbness in her hands and negative straight leg raise test. Dr. Douglas was also unable to maneuver Plaintiff's upper extremities to recreate the pain that Plaintiff complained about. (Tr. 489).

Additionally, the ALJ found that Dr. Asher's opinions were inconsistent with the findings of Consultative Examiner Dr. Marc Burns. In December 2005, Dr. Burns noted that Plaintiff complained of pain when flexing and extending her lumbar spine, and doing straight leg raises. (Tr. 211). Despite these complaints, Dr. Burns found that her physical and orthopedic examinations were within normal limits. (*Id.*). He also noted that her gait and station, grip strength and gross manipulation were all normal. (*Id.*). As a result of these findings, Dr. Burns opined that Plaintiff is capable of sitting, standing, moving about, lifting carrying, handling objects, hearing, seeing, speaking and traveling. (*Id.*).

Dr. Burns examined Plaintiff again in May 2011 – well after Dr. Asher had completed her treatment – and again found that she was without limitation. Dr. Burns did, however, note that Plaintiff had decreased range of motion with straight leg raises in the supine position. (Tr. 404). As the ALJ reported, though, Dr. Burns found this result inconsistent with Plaintiff's ability to raise her leg to 90 degrees in the sitting position. (*Id.*). Dr. Burns ultimately concluded that Plaintiff could perform sedentary activities without limitation (*Id.*), which provides additional support for the ALJ's decision to give Dr. Asher's opinion little weight.

In apparent disregard for the overwhelming evidence refuting Dr. Asher's opinion, Plaintiff believes the opinion of Consultative Examiner Charles Laney supports Dr. Asher's finding that she cannot work because of her back pain. However, as the ALJ noted, Dr. Laney's opinion is itself replete with problems as it is inconsistent with his own observations. Dr. Laney opined that Plaintiff cannot lift or carry objects, can only stand and walk for an hour a day, sit for four hours a day, and can never stoop, kneel, crouch, or crawl. (Tr. 381-384). But, as the ALJ pointed out, Dr. Laney's observation notes do not support these conclusions.

Upon examination, Dr. Laney reported that Plaintiff's range of motion in her ankle, cervical spine, elbow, hip, knee, lumbar spine, wrist and shoulder were all within the normal range. (Tr. 380). Dr. Laney also observed that Plaintiff could rise from a seated position and ambulate without assistance, though she could not bend or squat. (Tr. 378). Additionally, Plaintiff was reported as having maximum grip strength with adequate fine motor movements. Finally, Dr. Laney observed that Plaintiff had strong neck movement against resistance and was able to perform "good" shoulder shrugs. (Tr. 378). Each of these observations are inconsistent with Dr. Laney's ultimate conclusion, giving the ALJ adequate reasons to reject Dr. Laney's opinion.

### 2. The ALJ did consider the combined effect of Plaintiff's impairments

Plaintiff makes a cursory argument that the ALJ failed to consider the combined effect of her impairments. It seems Plaintiff is arguing that the ALJ discussed each of her impairments individually and failed to discuss them in tandem.

> The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of

impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, "all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Sec'y of Heath and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision properly referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

*Burke v. Comm'r of Soc. Sec.*, No. 1:10-cv-871, 2012 WL 512620, at *9 (W.D. Mich. Jan. 27, 2012).

Here, the ALJ's opinion indicates he considered the combined effects of Plaintiff's impairments. The Court notes multiple instances where the ALJ referred to Plaintiff's impairments in the plural form, indicating that the ALJ did consider the combined effect of Plaintiff's impairments. The ALJ's findings made reference to "severe impairments" (plural) and later referred to them as a "combination of impairments" in finding that they do not meet or medically equal a listing. Additionally, the ALJ reached an RFC assessment that included both Plaintiff's physical and mental limitations, and posed a hypothetical to the vocational expert based on that RFC. All of this shows the ALJ considered the combined effect of Plaintiff's impairments.

### 3. Plaintiff's "durational requirement" argument is without merit

Finally, Plaintiff questions "[w]hether the ALJ has considered the durational requirement of substantial gainful activity and not merely the ability to find a job and physically perform it." (Doc. # 11-1). Aside from listing this issue, though, Plaintiff does not develop it any further in her brief. The Court will overrule this claim of error for multiple

reasons.

This is not the first time Plaintiff's counsel has presented this identical claim in cursory fashion. In *Reid v. Colvin*, No. 13-36-ART, 2013 WL 3270436, at *6 (E.D. Ky. June 25, 2013), Plaintiff's counsel did just as he did here: he questioned whether the ALJ considered "the durational requirement of substantial gainful activity and not merely the ability to find a job and physically perform it" without "develop[ing] the meaning of this statement or present[ing] evidence in support of his position." *Id.* Judge Thapar overruled this claim because the Eastern District of Kentucky's standing order for social security benefits cases prohibits plaintiffs from making general arguments without providing specific evidence for their claim. *Id.* Additionally, Judge Thapar cited Sixth Circuit authority for the proposition that the Court is justified in deeming an argument waived when the party has raised it in "the most skeletal ways, leaving the court to . . .put flesh on its bones." *Id.* (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Just as Judge Thapar did in *Reid*, the Court will overrule Plaintiff's claim of error here because she failed to present anything more than a bald assertion of error.

Even if Plaintiff had developed this argument, it would fail on the merits just as it has every other time it has been raised by Plaintiff's counsel. The Court is all too familiar with the argument at this point: Plaintiff's counsel generally relies on a Ninth Circuit Court of Appeals decision for the proposition that an ALJ must separately consider whether a claimant is capable of holding an available job for a significant period of time. *See Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999). Every judge in the Eastern District of Kentucky, including the undersigned, has repeatedly rejected the argument that there is a separate durational requirement, instead finding that the ALJ takes the claimant's ability

to maintain employment into account when determining an RFC. *See Clark v. Astrue*, No. 11-260-ART, 2011 WL 6742926, at *4 (E.D. Ky. Dec. 23, 2011) (collecting cases). Until counsel provides an explanation as to why this Court's previous adverse rulings were incorrect, this argument will be dismissed outright.

The Court will also remind counsel of his obligations under Federal Rule of Civil Procedure 11(b)(1) and (2). By presenting this argument to the Court, he has certified that to the best of his knowledge, information and belief, the argument is not being presented for any improper purpose and it is warranted by existing law. Over a two-year period ending in 2011, Plaintiff's counsel raised this argument fifty-one times in the Eastern District of Kentucky, failing all fifty-one times. *Clark*, 2011 WL 6742926, at *4. Judge Reeves has said he was "troubled" by the number of times Plaintiff's counsel has raised this baseless argument, particularly because counsel continued to bring it without acknowledging the growing body of case law against the argument. *Id.* Judge Thapar and the late Judge Forrester have joined in Judge Reeves' sentiment. This Court joins their ranks today and cautions counsel that he may run afoul of Rule 11 if he continues to present this argument without explaining why the Court's prior rulings are incorrect.

### III. CONCLUSION

For the reasons stated herein, the court concludes that the ALJ's finders were adequately explained and supported by substantial evidence. Accordingly, for the reasons stated,

(1) The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**;

(4) A Judgment shall be entered contemporaneously herewith.

This 23rd day of July, 2014.



G:\DATA\SocialSecurity\MOOs\London\13-93 Vanonver MOO.wpd